UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CURTIS W. BUFORD,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN V. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | NO. C13-900-RSL-JPD<br><br>REPORT AND RECOMMENDATION |

Plaintiff Curtis W. Buford appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner"), which denied his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be reversed and remanded for further administrative proceedings.

I. FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, Plaintiff was a 43-year-old man with an associate's degree in computer electronic engineering. Administrative Record ("AR") at 61. His past work experience includes employment as a construction laborer, retail cashier, photo lab technician, and pizzeria cook/manager. AR at 206. Plaintiff was last gainfully employed

REPORT AND RECOMMENDATION - 1

in January 2005. *Id.*

On September 19, 2009, Plaintiff filed a claim for SSI payments. AR at 176-78. On August 3, 2009, he filed an application for DIB, alleging an onset date of November 1, 2005.[1] AR at 174-75. Plaintiff asserts that he is disabled due to degenerative disc disease, nerve damage, muscle trauma, and depression. AR at 218, 245.

The Commissioner denied Plaintiff's claim initially and on reconsideration. AR at 104-11, 113-22. Plaintiff requested a hearing, which took place on June 14, 2011. AR at 58-89. On September 2, 2011, the ALJ issued a decision finding Plaintiff not disabled under the Medical-Vocational Guidelines and denied benefits. AR at 28-50. Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-7, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On May 23, 2013, Plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 1, 3.

## II.   JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

---

[1] At the administrative hearing, Plaintiff amended his alleged onset date to December 11, 2008. AR at 70.

REPORT AND RECOMMENDATION - 2

*Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

### IV.   EVALUATING DISABILITY

As the claimant, Mr. Buford bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are

REPORT AND RECOMMENDATION - 3

of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[2]  If he is, disability benefits are denied.  If he is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities.  If the claimant does not have such impairments, he is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's

---

[2] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. This burden may be met via reference to the Medical-Vocational Guidelines, or by consulting a vocational expert. *Tackett*, 180 F.3d at 1101. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.   DECISION BELOW

On September 2, 2011, the ALJ found:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2009.

2. The claimant has not engaged in substantial gainful activity since December 11, 2008, the alleged onset date.

3. The claimant's degenerative disc disease of the lumbar spine, mild right glenohumeral joint degenerative disease, a mood disorder, cluster B personality traits, and substance abuse in remission are severe impairments.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. The claimant has the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b) — except he can occasionally climb ramps/stairs, balance, stoop, kneel, crouch and crawl. He can never climb ladders, ropes or scaffolds. He is limited to occasional overhead reaching on the right. He is limited to vibration and hazards. He can perform simple and some detailed tasks. He cannot work with the general public.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on XXXXX, 1967[3] and was 41 years old, which is defined as a younger individual age 18-49, on the amended alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability.

10. Considering the claimant's age, education, work experience, and RFC, the Medical-Vocational Guidelines direct a finding of non-disability.

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 11, 2008, through the date of the decision.

AR at 31-49.

## VI. ISSUES ON APPEAL

The principal issues on appeal are:

1. Did the ALJ err in discounting Plaintiff's credibility?

2. Did the ALJ err in discounting the June 2011 opinion of treating physician Thomas Tocher, M.D.?

3. Did the ALJ err in assessing the opinions of State agency psychological consultants as to Plaintiff's mental functioning?

4. Did the ALJ err in relying on the Medical-Vocational Guidelines at step five?

Dkt. 15 at 1.

## VII. DISCUSSION

A. <u>Plaintiff has Not Established that the ALJ Erred in Discounting Plaintiff's Credibility.</u>

Plaintiff argues that the ALJ's adverse credibility determination is erroneous because the ALJ applied an incoherent standard of law. Dkt. 15 at 23. The ALJ explained that he found that Plaintiff "has little credibility and that his medically determinable impairments

---
[3] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 6

could not reasonably be expected to cause his alleged symptoms, and certainly not his alleged limitations; consequently [Plaintiff's] statements are not credible to the extent not consistent with the [RFC assessment]." AR at 36. According to Plaintiff, if the ALJ believed Plaintiff's impairments "could not reasonably be expected to cause his alleged symptoms," he should have found him not disabled at step two. Dkt. 15 at 23.

In the Ninth Circuit, an ALJ assessing credibility must first determine whether a claimant presents "objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Given presentation of such evidence, and absent evidence of malingering, an ALJ must provide clear and convincing reasons to reject a claimant's testimony. *Lingenfelter*, 504 F.3d at 1036.

Although the ALJ's initial credibility finding is not artfully worded, the context of the entire section makes clear that the ALJ properly focused on evaluating "the intensity, persistence, and limiting effects of [Plaintiff's] symptoms to determine the extent to which they limit [his] functioning." AR at 34. The ALJ summarized Plaintiff's allegations (AR at 35-37), and ultimately found them not credible due to inconsistent medical evidence, evidence of symptom magnification and drug-seeking behavior, failure to put forth full effort on examination, improvement with physical therapy, and use of an assisted device when not medically necessary. AR at 37-39. In the context of this entire credibility section, which is almost entirely unchallenged, Plaintiff has not shown that the ALJ's lack of clarity as to the appropriate legal standard applicable to assessing credibility contributed to any prejudicial error.

//

1  B.	The ALJ Did Not Err in Discounting Dr. Tocher's Opinion.

2	Treating physician Dr. Tocher opined in June 2011 that Plaintiff's degenerative disc
3 disease of the lumbar spine and the pain caused thereby impaired his ability to *inter alia* stand,
4 walk, and sit (such that he could stand and/or walk for at least two hours and sit less than six
5 hours in an eight-hour workday), and caused restrictions in various postural activities. AR at
6 565-68. The ALJ discounted this opinion because (1) Dr. Tocher's treatment notes contained
7 inconsistent findings and did not support limitations as severe as stated in the opinion; (2) other
8 evidence was inconsistent with Plaintiff's self-reported symptoms; and (3) Dr. Tocher relied on
9 Plaintiff's self-report, which was not credible. AR at 43. Plaintiff argues that the ALJ erred in
10 discounting Dr. Tocher's opinion because some of his exam findings were corroborated by
11 other medical evidence, the cited inconsistent evidence from 2009 failed to account for his
12 worsening since then, and because the ALJ failed to identify any non-credible statement made
13 by Plaintiff to Dr. Tocher. Dkt. 15 at 8-9.

14	The Court disagrees with Plaintiff, because the ALJ's reasons are specific and
15 legitimate. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (holding that contradicted
16 opinions provided by a treating or examining physician may be discounted only for specific
17 and legitimate reasons supported by substantial evidence in the record). First, many of Dr.
18 Tocher's treatment notes do in fact contain inconsistent findings, or are inconsistent with the
19 severity of restrictions indicated in the treatment notes contemporaneous with the June 2011
20 opinion. *See* AR at 569 (indicating 15-degree lumbar flexion, positive straight leg raise on
21 right), 579 (indicating Plaintiff's passive range of motion was limited only at the "extremes of

REPORT AND RECOMMENDATION - 8

rotation"), 580 (indicating positive straight leg raise on the left, negative on the right).[4]

Second, the imaging studies apparently relied upon by Dr. Tocher (AR at 569) are the same studies that were found to reveal some degenerative changes but primarily muscular issues in August 2009.  AR at 491.  Although Plaintiff argues that August 2009 findings were outdated at the time Dr. Tocher examined Plaintiff, he does not show that Dr. Tocher ordered new MRIs that revealed, for example, that Plaintiff's degenerative disease had worsened.  Dr. Tocher mentioned "references to degenerative disk disease on MRIs from previous primary care providers" (AR at 569); Plaintiff's argument that the previous MRIs are outdated does not bolster Dr. Tocher's opinion.  Because Plaintiff has cited no imaging evidence showing that his degenerative disc disease worsened between August 2009 and June 2011, the ALJ did not err in discounting Dr. Tocher's opinion to the extent that it was inconsistent with prior interpretations of the same imaging studies.

Finally, Dr. Tocher explicitly relied on Plaintiff's subjective reporting when evaluating his limitations.  AR at 566.  Because the ALJ properly discounted the credibility of Plaintiff's subjective reporting, he was entitled to discount any medical opinion to the extent it relied on that non-credible self-report.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  As the ALJ explicitly found that Plaintiff's descriptions of pain were not credible (AR at 38), he did not err in discounting Dr. Tocher's opinion to the extent that he relied on Plaintiff's description of pain in rendering his opinion.  *Id.*

C. <u>The ALJ Did Not Err in Assessing the State Agency Opinions Regarding Plaintiff's Mental Functioning.</u>

The ALJ credited much of the State agency opinions regarding Plaintiff's mental

---

[4] Plaintiff cites the June 2011 treatment notes as corroborating the "accompanying treatment note" described by the ALJ; they both reference the same note, which cannot corroborate itself.  AR at 43; Dkt. 18 at 3.

REPORT AND RECOMMENDATION - 9

functioning, but rejected the opinion that Plaintiff was limited to unskilled work as unsupported by the record and inconsistent with his mental status examination findings. AR at 45. Plaintiff argues that a restriction to unskilled work is in fact consistent with the record, and that the ALJ also overlooked the State agency consultant's opinion that Plaintiff has adaptation deficits. Dkt. 15 at 13-14.

The Court disagrees on both counts. The ALJ identified multiple psychological examinations of record revealing either no cognitive limitations or only mild cognitive limitations, both of which are inconsistent with a restriction to unskilled work. *See* AR at 298, 394-95, 430. Because the ALJ's reason to discount the State agency opinion is supported by substantial evidence in the record, it should be affirmed.

As to Plaintiff's adaptation deficits: although the State agency consultant indicated in the checkbox portion of the Mental RFC Assessment ("MRFCA") form that Plaintiff has a "moderate" limitation in his ability to respond appropriately to changes in the work setting (AR at 414), he indicated in the narrative portion of the form that Plaintiff "is able to meet basic adaptive needs." AR at 415. The ALJ properly focused on the narrative portion of the form — which does not indicate a particular adaptive limitation — rather than the checkbox portion, and thus did not err in failing to incorporate an adaptation limitation in the RFC assessment. *See* Program Operations Manual System ("POMS") DI 25020.010 at B.1 (directing ALJs to use the narrative portion of MRFCA form, not checkbox portion of form, in assessing RFC).[5]

D.   The ALJ Erred at Step Five.

The ALJ found that Plaintiff could perform light work with some additional restrictions (AR at 34), and indicated that although he could not perform his past work, application of the

---

[5] Although the POMS "does not have the force of law" it "is persuasive authority." *Warre v. Comm'r of Social Sec. Admin.*, 439 F.3d 1001, 1005 (9th Cir. 2006).

Medical-Vocational Guidelines directed a finding of non-disability because Plaintiff's "physical nonexertional limitations do not significantly erode the universe of light work" and his mental limitations likewise do not "significantly erode" "his occupational base for sedentary unskilled work" AR at 46, 48 (emphasis removed).  Reliance on the Medical-Vocational Guidelines is appropriate when a claimant can perform the full range of jobs in any given exertional category, but they do not apply where a claimant has significant non-exertional limitations.  *Tackett*, 180 F.3d at 1101-02.

Plaintiff argues that the ALJ erred in finding that his reaching limitation was insignificant, because such a finding is unsupported in the record and is instead simply assumed by the ALJ (AR at 46 n.27), and that vocational expert testimony was required to support the ALJ's step-five finding.  Plaintiff cites to Social Security Ruling ("SSR") 85-15 to argue that reaching limitations are significant:

> Reaching, handling, fingering, and feeling require progressively finer usage of the upper extremities to perform work-related activities.  Reaching (extending the hands and arms in any direction) and handling (seizing, holding, grasping, turning or otherwise working primarily with the whole hand or hands) are activities required in almost all jobs. *Significant limitations of reaching or handling, therefore, may eliminate a large number of occupations a person could otherwise do. Varying degrees of limitations would have different effects, and the assistance of a [vocational expert] may be needed to determine the effects of the limitations.*

1985 WL 56857, at *7 (Jan. 1, 1985) (emphasis added).

The Commissioner does not offer any substantive defense of the ALJ's finding, merely asserting without citation to authority that "[i]nsignificant limitations on reaching are [] unlikely to eliminate large portions of the job base."  Dkt. 17 at 14.  But Plaintiff asserts that the ALJ erred in finding that a restriction to occasional overhead reaching is insignificant; the Commissioner's reiterating that this restriction is insignificant (without citing any authority so holding) does not persuade this Court that the ALJ properly found it to be so.  Furthermore,

REPORT AND RECOMMENDATION - 11

multiple courts in this circuit have suggested that reaching limitations can be significant and thus reliance on the Medical-Vocational Guidelines is inappropriate in situations where an ALJ finds that a claimant has a reaching restriction. *See, e.g.*, *Vargas v. Colvin*, Case No. 03:12-cv-00768HZ, 2013 WL 3119566, at *4-5 (D. Or. Jun. 18, 2013) (finding that a restriction to occasional overhead reaching may have a significant impact on the occupational base of sedentary jobs and thus vocational expert testimony was required); *Briseno v. Comm'r of Social Sec. Admin.*, Case No. 1:11-cv-01988AWI-SAB, 2013 WL 245654, at *9 (E.D. Cal. Jan. 22, 2013) (finding that an ALJ erred in finding that a limitation to frequent reaching was insignificant); *Stevens v. Astrue*, Case No. 09-cv-0444TUC-BPV, 2011 WL 2448342, at *2 (D. Ariz. Jun. 20, 2011) (rejecting the Commissioner's argument that occasional reaching restrictions are generally not significant).

It is true that some courts in the Ninth Circuit have indicated that a reaching restriction can be insignificant and does not necessarily preclude application of the Medical-Vocational Guidelines. *See, e.g., Summers v. Comm'r of Social Sec. Admin.*, Case No. 08-cv-1309CMK, 2009 WL 2051633, at *23 (E.D. Cal. Jul. 10, 2009); *Absher v. Astrue*, Case No. 06-cv-1131TAG, 2008 WL 822160, at *10-11 (E.D. Cal. Mar. 27, 2008); *Cooper v. Astrue*, Case No. 06-cv-2067GGH, 2008 WL 508917, at *5-6 (E.D. Cal. Feb. 22, 2008). But because the language of SSR 85-15 itself (as analyzed in the cases listed in the previous paragraph) seems to suggest that reaching limitations can be significant, the Court finds that the ALJ's conclusory assumption that Plaintiff's reaching limitation "cannot be reasonably assumed to significantly limit light work, as most light jobs do not involve[] more than occasional overhead reaching" (AR at 46) is unsupported by the record and therefore erroneous. On

remand, the ALJ shall obtain VE testimony[6] when reconsidering his step-five findings.

## VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions.   A proposed order accompanies this Report and Recommendation.

DATED this 3rd day of December, 2013.

*James P. Donohue*
JAMES P. DONOHUE
United States Magistrate Judge

\

---

[6] The ALJ's hypothetical to the VE on remand shall reference all limitations included in the RFC assessment, including mental limitations.  Because the Court determined that the ALJ erred in relying on the Medical-Vocational Guidelines despite Plaintiff's reaching limitation, the Court need not address whether the ALJ's reliance was also erroneous because the prohibition on public contact was significant.  *See* Dkt. 18 at 8.

To the extent that Plaintiff argues that the ALJ's RFC assessment should have incorporated the "paragraph B" findings at step three (Dkt. 18 at 8), he is in error.  *See* SSR 96-8p, 1996 WL 374184, at *4 (Jul. 2, 1996) ("The adjudicator must remember that the limitation identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process.").

REPORT AND RECOMMENDATION - 13